**DAVID NIVIN'S LESSEE v. ADAM DIEHL and others, Tenants.**

Court of Common Pleas. New Castle. May 24, 1803.

*Rodney's Notes.*

*G. Read, Vandyke* [1] [for plaintiff]. *Rodney, Bayard* [for defendants].

Pretensions and plots returned.

*G. Read.* The title on the part of the plaintiff is founded on a lease from the manager of St. George's Marsh Company to David Nivin, the lessor of the plaintiff, under the sale for taxes due etc. Patent 1675. About the year 1790, those lands and marsh were sold by Henry Ward Pierce and his son, Matthew Pierce, to Solomon Maxwell, William Guier and Adam Diehl. August 8, 1798, lease of Jesse Higgins and Nathan Lord, surviving managers of St. George's Marsh Company, [for] consideration [of] £452 to David Nivin for seven years from the 28th of

---

1 The manuscript reads "Bayard."

July, subject to other taxes already incurred or hereafter to accrue. January 27, 1802, Supplementary Act for stopping St. George Creek etc. and to make the copy of the original Act (said to be lost) evidence under certain regulations, [3 Del.Laws 219.] 1762, copy of original Act for stopping St. George's. February 2, 1788, additional supplement, [2 Del.Laws 921], estimate of expense to be made by Commissioners, or any three of them, returned to the Prothonotary's Office. A paper offered, and objected to by *Mr. Bayard,* dated 1792, and filed in Prothonotary's Office "not more than ten [years]" past, by Mr. Johns, purporting to be a return of Commissioners of the rateable expense of that bank etc., under which the lands were sold.

*Vandyke.* I apprehend the paper offered is evidence strictly competent; by the Act of 1788 Commissioners were authorised to make return into Prothonotary's Office.

*G. Read.* No time limited in the Act of 1788; therefore the return having been made ten [years] past, not a good objection.

*Rodney* in supplement of the objection. Proving of the handwriting of sealed deed no evidence of delivery.

*Bayard* in conclusion. The Act of 1788 does not even give authority to do the act they have done, but the last counsel has changed the ground to the other provision, by which Commissioners are to give notice to owners etc. and lay out a new bank etc.

PER CURIAM. The paper offered we do not consider as a record of the Court, being only offered this day, and, therefore, no presumption arising from that circumstance that the notice etc. required by the Act has been given, [it] has no weight with the Court and must be considered as incompetent.

1793, additional supplement passed June 14. [2 Del.Laws 1098.]

William Stidham. I acted as Commissioner under the law of 1788, had notice and attended with a number of the Commissioners, laid out the new bank etc. I think we assessed the damages and signed our returns in writing. I subscribed the return. The present bank was erected there since. We all signed the instrument, and one kept it to return into the office according to law, under the Act of 1793. Mr. Johns attended, was owner before that. We deeded to Mr. Johns the return to be returned into the office, for that express purpose which it was the intention of the Commissioners to return.

*Rodney* objected to the admission of Chief Justice Johns, who is a member of the Marsh Company and therefore interested. 1

Morg.Ess. 279, that freeman of London could not be a witness for the Water Bailage.

*Vandyke* for plaintiff. We offer the witness to prove that the witness is the treasurer of the Marsh Company and from necessity may be a witness to prove [that] the papers came into his hands from the treasurer, his predecessor. 3 Term, *Bent v. Baker.*

*G. Read.* Question [is] whether an officer of the Marsh Company can give evidence as to the possession of papers belonging to that company. The general question [is] whether an officer or owner in a marsh company can be a witness between an owner and a person claiming under a sale by the Marsh Company for taxes etc. Morg.Ess. 264, member of corporation may be admitted to prove the usage. Case of *Clay's Administrators d. b. n. v. Hyat,* defendant was admitted in Supreme Court to prove the loss of his books, from necessity.

*Bayard* in objection.

Mr. Johns admitted and sworn to give evidence as to the custody of the paper. That he received both the papers from one of the Commissioners as a manager of the Company as of the date, and had the exclusive possession of the papers.

Wednesday, May 25th. The Court met according to adjournment.

Nathan Lord. A manager until March, 1801, having received a release from plaintiff, proved the manager's or company book. I became an owner about 1797 or Fall, 1796. Mr. Johns has been treasurer ever since. H. W. and Matthew Pearce were owners and Matthew attended as such after they sold Diehl and Company; generally attended as owners and have had possession three years. I acted as manager in stopping the creek, after the new bank was put up. The original assessment list, 1796, proved, June 5, 1797. Advertisement or notice of meeting, several were set up dated 1798, set up a month or six weeks before the sale. Was sold to David Nivin. Guyer and Diehl would not agree to pay anything till the contract for completing the bank made with Jesse Higgins was completed. Never denied taxes being due.

February 12, 1796. A paper proved. Nivin purchased six or seven hundred acres, being all that belonged to Guyer and Diehl under St. George's Bank. John McCully lives in the house on the fast land on this property as overseer, was there before I sold out. Another part of the purchase is in possession of Diehl, is rated generally at about $6 per year per acre. Was no sale made agreeably to first notice, on the second sale Kensey Johns,

Jesse Higgins, David Nivin were bidders. David Nivin acted as administrator to Maxwell, paid me the purchase money. No other person attended the sale as agent for Diehl and Company. Did not know he was agent. I rather think the sale by adjusters was two or three months after the first appointment. A small part of the Marsh has been leased for half the profits.

Book of proceedings of owners and managers of St. George's Company. Page 7. February 1793. Managers appointed. Mr. Johns admitted to prove the Company's books.

Daniel Blaney, surveyor, sworn, to prove the plot.

John Clark.

John Crow. 48 years of age. Have known the land 33 years. The custom in this Company and as far as I know the usage has been for the persons who bid the lowest term of years, and became liable for the debt, were considered the highest bidders.

John A. Pennington. Have known the land fifty years. I am 62. Henry W. Pearce was a son of Benjamin. Margaret Ward [was] his wife. She was the only child and daughter of Henry Ward.

William Bradey. Served the summons on A. Diehl.

Return of valuation of damages objected to. Objection overruled.

The Court met agreeably to adjournment at eight o'clock. A paper offered purporting to be a new agreement with Jesse Higgins etc. Objection that Dushane's name is not proved, and that the defendant was no party, etc.

After argument the paper admitted, and exception prayed. Another paper offered, 1795, sworn 1799, four years after. *Bayard.* Objected to [it]. Commissioners should have been sworn before signing, and the oath made before Mr. Johns who was interested.

*Read.* In support of paper offered.

Objection overruled.

Thursday, May 26th, the Court met agreeably to adjournment. The counsel for plaintiff having taken two days in going through their evidence. The counsel for defendant have waived their objection to the return of Commissioners for laying out the bank to which an exception was taken. Read to jury.

*Vandyke* for plaintiff. We claim this property under a sale made by the managers. 1762, [1 Del.Laws 403,] the Act gives authority to Commissioners and managers to assess and sue for damages [and] power to managers to sue and to lease out marsh,

after notice, to lowest bidder, which creates a specific lien. Act [of] 1788, [2 Del.Laws 921,] power vested in managers to lay taxes, and all the authority given them to collect etc. by the Act of 1762 extended to them by this. Assessment lists of 1796 for the expense of creating bank etc. 1798 advertisement without the month or day, to sell [the marsh] for a term of years for the payment of taxes, signed Jesse Higgins and Nathan Lord, the surviving managers. Lease made by them to D. Nivin for seven years dated August 8, 1798, five lots of marsh for taxes 1796 and 1797. Sale made July 28, 1798. I contend, let the fee simple be in whom it will in this property, yet the managers may for taxes rent out this property for any term of years and make a good title to the lessee.

*Mr. Bayard* for defendant. In this cause there are two points of law for the court to decide. Under the Marsh Law two persons, N. Lord and J. Higgins, have undertaken to act. First, it does not appear the managers were qualified. According to law they should expressly show they were owners or possessors. No proof of it whatever. Another qualification, no contract on their part to pay their quota. 1788, persons whose contracts do not oblige them to pay their quota etc. are ineligible by this act and are void. Second, according to what they call a lease, they have made an absolute sale without reserving rent. [There must be] landlord and tenant to a lease. The intention of the legislature was to rent the land to pay the taxes, by an annual rent, in most beneficial manner to reversioner. [Act of] 1762, s. 12, to let out on rent from year to year, or for so long a time as the rents will pay etc. until the rent or rents pay the taxes. Two modes by the Act to recover taxes, one by suit at law, the other by renting. Advertisement "to be sold for a term of years," and not to be leased or rented. P. 34, manager's book. Matthew Pearce's lot, number seven, one hundred acres, sold for £40 for the term of fifty years (worth $6 per annum) to Kensey Johns, Esq. Pow. Powers 389, powers given to tenant for life, to be construed most beneficially to the remainderman. Every circumstance must be strictly complied with or the lease is void. [Pow. Powers] 411, a power to lease to be construed strictly against the lessor. 1 Burr. 120, Lord Mansfield, all acts done under a special power must be pursued in form and substance or void. Definition of lease is that landlord and tenant are mutually bound, nor can there be a lease unless somebody is bound to hire and pay the rent. 1 Bl.Comm. 76, custom cannot prevail against an Act of Parliament. Doug. 659, on a penal statute respecting marriages, the court were bound by the Act notwithstanding the usage set up.

*Rodney.* Cowp. 26, a special authority given by statute to take a man's property against his will must be strictly pursued. Notice not proved is not cured by mortgagor's appearance. Consideration of Burr. Sett. Cases 115.

*Vandyke* for plaintiff. The fact whether the managers were legally qualified is to be decided by the jury. Nathan Lord chosen as owner in 1796; Jesse Higgins in 1797. I contend [that] should be received as evidence of their qualification with the assessment list of 1796, 1797. Second objection relied on by defendants [is] whether the proceedings of the managers were such as, according to the Acts, may be supported agreeably to the intention of the legislature. 2 Co.Inst., from necessity a statute may be expounded contrary to the words. 5 Com.Dig. 256, preamble a key to construction. *Quaere* in this case. Hob. 346. 3 Bac. Abr. 390, 391, by statute lease for liens void, yet by the courts it shall not be void against the party making the lease. Co.Litt. 81 B. In 1794 Marsh Company against Alexander Porter in Supreme Court.

*Read* for plaintiff. First, that it does not appear managers were qualified. This appears to me to be a matter of fact, that the Court will not say should defeat the action until it is ascertained by the jury. Jesse Higgins and Nathan Lord appear to be recognized by the minority of the managers as owners. Second and most prominent point, as to form of lease, and as to the power of managers under the Act to make such a sale: object of the law from the preamble, to collect money that should be necessary to make a bank, etc., by consent, in the first instance, of all the owners, and such construction should be given the law as to carry into effect the objects of the Company. And a lease may be so made as that the consideration may be paid in advance or reserved to the end of the term. Usage, the gentleman says, should be immemorial; if so, it could never apply to Acts of Parliament. But there is another kind of usage which is under statutes and assists in the construction of statutes. 1795, in the case from Supreme Court, exceptions were taken both as to form and as to substance. Another question however was discussed, whether, or how far, the *certiorari* would lie. Upon the whole, the court did not see fit to sustain the proceedings without giving a particular opinion on the several points. In this I consider the greatest liberality of construction should be allowed. Where a member of the Company conceives himself aggrieved, he should proceed either by *certiorari* or *mandamus,* which is the regular mode in corporations. The construction of powers I agree is to be strict, but Acts of Assembly have been compared to wills, to collect the intention from which the greatest latitude is allowed.

*Rodney* for defendant. We have brought this question before the Court, because we think it belongs to them as a question of law. Have they given any legal evidence that Lord and Higgins were owners of land, in writing? Their own books only of their appointment have been shown. The counsel on the other side do not deny that managers should have those qualifications. Second point: by this lease, as they call it, could the managers, if Nivin had not paid the money, have distrained, or might it not have been lost if he had not been able to pay it? I shall not travel over the same ground my colleague has done.

*Bayard* in conclusion. The question on first point submitted to the court is whether any legal evidence has been given that Lord and Higgins were owners or possessors. The best in this case would be deeds in writing. If the plea was that managers were not qualified, would the evidence now offered support or maintain the issue? The counsel have pretended this is not the case of powers as in Powell. I contend it is the strongest case that can be put giving them an authority over lands. The terms of the law, "to let out and rent till the rent or rents arising therefrom," are so plain that there is no room for construction. In some cases the land is sold; in this case the money is sold. *Porter v. Johns and others,* in Supreme Court eight years ago. My impressions are that it was not a case for the Supreme Court to interfere, being a dispute of property. There should have been a jury trial, and *certiorari* was quashed and not proceedings below; and it appears from the exceptions filed by Mr. Read he held the true construction of the law to be what we contend for. No usage spoken of or in evidence but one year before the sale.

PER [CURIAM]. On the first point we are of opinion that evidence should have been produced by deed in order to show the qualifications of the managers who made the sale and executed the lease to the lessor of the plaintiff. And secondly, that from a consideration of the law of 1762, section 12, we are of opinion a special power is given which should be strictly pursued and rented from year to year. The sale in this case being an absolute sale, we deem [it] to be repugnant to the Act and void.

Exception prayed and granted.

The jury after receiving the direction of the Court on the above points found a verdict for defendant, and Court adjourned at ten o'clock P. M. Thursday, after being engaged three days in this cause.